# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | |
|---|---|
| CHARLENE MADLOCK, as Administrator of the Estate of James Lee, deceased; and JESSICA FLOWERS, <br><br>Plaintiffs, <br><br>v. <br><br>POLICE OFFICER JOHN PETERSON; and POLICE OFFICER ROBERT McMILLEN, <br><br>Defendants. | Case No. 08-1117 |

## **OPINION & ORDER**

Before the Court is Defendants Peterson and McMillen's Motion for Reconsideration (Doc. 40), and Defendants Peterson and McMillen's Memorandum in Support of their Motion for Reconsideration (Doc. 41). For the following reasons, Defendants Peterson and McMillen's Motion for Reconsideration is DENIED.

### PROCEDURAL BACKGROUND

On April 22, 2008, Plaintiffs filed their Complaint against Defendants in the Circuit Court of the Tenth Judicial Circuit, Peoria County, Illinois. (Doc. 1-1). On May 22, 2008, Defendants moved to remove the case to federal court (Doc. 1) as this action is one in which the United States District Courts have original jurisdiction in pursuant to 28 U.S.C. § 1331, which motion was granted on July 31, 2008. (Doc. 7).

Defendants filed a Joint Answer on September 29, 2008 (Doc. 10), and filed a Motion for Summary Judgment on February 16, 2010. (Doc. 30). Plaintiff filed a Memorandum in Opposition to the Motion for Summary Judgment (Doc. 36) on March 29, 2010 and Defendants filed a Reply on April 13, 2010. (Doc. 37).

This Court entered an Order on September 28, 2010 granting Counts I, II, III, IV, V, VI, and VII and denying Count VIII of Defendants Motion for Summary Judgment. (Doc. 38). Because Count VIII was the only claim remaining and it was based wholly on state law, Count VIII was remanded to the Peoria County Circuit Court. On October 26, 2010, Defendants filed a Motion for Reconsideration of the Order denying Count VIII of their Motion for Summary Judgment and a Memorandum in Support of their Motion for Reconsideration. (Doc. 40; Doc. 41).

## FACTUAL BACKGROUND

Plaintiff Jessica Flowers ("Flowers") lived with James Lee ("Lee"). (Doc. 36 at 1). On the evening of April 26 through the early morning of April 27, 2007, there was an altercation between the two. (Doc. 36 at 19). Flowers eventually called 911; allowing the dispatcher to hear the commotion. (Doc. 36 at 4). While the couple was still fighting inside the home, Peoria police officers arrived on the scene. (Doc. 36 at 8). Officers Peterson ("Peterson") and McMillen ("McMillen") were dispatched to the residence, after being informed that there was a female having trouble with a male and that it seemed as though the male was right next to the female so that she was unable to talk. (Doc. 36 at 8). The Officers were also told that Dispatch could hear a female screaming and a baby crying in the background. (Doc. 36 at 8).

Peterson was the first to arrive on the scene. (Doc. 36 at 8). He immediately approached the house, and could hear yelling and banging noises coming from inside the residence. (Doc. 36 at 9). Peterson called for back up once he believed that things inside were getting violent and the situation could become dangerous. (Doc. 36 at 9). At that time, McMillen arrived. (Doc. 36 at 10). The two Officers then entered an enclosed porch and Peterson attempted to enter the house, but upon discovering that the door was locked resorted to knocking. (Doc. 36 at 10). When Lee opened the door, Peterson stepped into it to try to gain access to the house. (Doc. 36 at 10). Lee immediately tried to shut the door, and at the same time, Flowers was trying to pull the door open from the inside. (Doc. 36 at 6). The entire time this struggle was taking place, Lee had a gun in his right hand. (Doc. 36 at 5-6). As soon as Peterson saw the gun, he stepped back and the door closed. (Doc. 36 at 11). While Peterson was informing McMillen that the man inside had a gun, unbeknownst to the Officers, Lee slid the gun under a couch next to the door. (Doc. 36 at 6, 11). Outside, McMillen pointed his gun at the door and shouted at Lee to, "Put your hands up." (Doc. 36 at 12). After getting confirmation from Peterson, McMillen aimed at the center of Lee's chest and fired two shots. (Doc. 36 at 12). Both bullets struck Lee. (Doc. 36 at 6). In addition to hitting Lee, one of the bullets fired pierced Flowers' right hand as she had been reaching across Lee's body to push her daughter away from Lee's back. (Doc. 36 at 6).

## LEGAL STANDARD

Technically, a "Motion to Reconsider" does not exist under the Federal Rules of Civil Procedure. The Seventh Circuit has held, however, that a motion challenging the merits of a district court order will automatically be considered as having been filed pursuant to Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure. *See Mares v. Busby*, 34 F.3d 533, 535 (7th Cir. 1994). Rule 59(e) allows a litigant to move to alter or amend a judgment. Fed. R. Civ. P 56(e). Motions for reconsideration generally serve a very narrow function and must be supported by a showing of extraordinary circumstances justifying relief from judgment. *Bally Export Corp. v. Balicar Ltd.*, 804 F.2d 398, 400 (7th Cir. 1986). The rulings of a district court are not to be viewed "as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988). Rather, motions for reconsideration are designed to correct manifest errors of law or fact or to present newly discovered evidence. *Publishers Resource, Inc. v. Walker-Davis Publ'n., Inc.*, 762 F.2d 557, 561 (7th Cir. 1985). Accordingly, a motion for reconsideration is an "improper vehicle to introduce evidence previously available or to tender new legal theories." *Bally*, 804 F.2d at 404. *See also Quaker*, 123 F.R.D. at 288 (reconsideration of final rulings will not be granted to allow the losing party to rehash old arguments or to present new legal arguments or facts which the party could have presented during the pendency of the underlying motion).

More recently, the Seventh Circuit observed that a motion for reconsideration performs a valuable function where the court has patently misunderstood a party, has made a decision outside the adversarial issues presented to the court by the parties, or has made an error not of reasoning but of apprehension. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (quoting, *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 191 (E.D. Va. 1983)). A further basis for a motion for reconsideration would be a controlling or significant change in the law or facts since the submission of the issue to the court. *Id.*

## DISCUSSION

According to the applicable legal standard, a motion to alter or amend filed pursuant to Rule 59(e) may only be granted if a movant shows there was a mistake of law or fact, or presents newly discovered evidence that could not have been discovered previously. *Matter of Prince*, 85 F.3d 314, 324 (7th Cir. 1996), *reh 'g and suggestion for reh 'g en banc denied, cert. denied* 519 U.S. 1040; *Deutsch v. Burlington Northern R. Co.*, 983 F.2d 741 (7th Cir. 1993).

Defendants argue that their conduct does not qualify as willful or wanton under Illinois law. (Doc. 41 at 2). They do not contend that there is new evidence that supports their defense, but instead, assert two arguments based on the record as determined by the Court: (1) Peterson's confirmation given to McMillen to use his weapon is uncontested, along with both fired shots striking Lee, and (2) that any claimed obstruction of their view proves insufficient, as a matter of law, for having a

jury decide whether their conduct qualified as willful and wanton. (Doc. 41 at 2). As such, Defendants contend that precedents from Illinois courts compel a different outcome with respect to their request for summary judgment on Count VIII of Plaintiff's Complaint. (Doc. 41 at 3).

In order to support this contention, Defendants rely on their assertion that neither Officer committed willful and wanton conduct and under the Tort Immunity Act, police officers do not incur liability for any of their acts or omissions in the execution or enforcement of any law unless their acts or omissions constitute willful and wanton conduct. 745 ILCS 10/2-202 (Doc. 41 at 3). Defendants contend that Flowers' evidence fails to create a triable issue over whether the actions of the Officers displayed "an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210 (Doc. 41 at 3).

In addition, Defendants rely on precedent in which Illinois courts have affirmed summary judgment rulings that find an absence of sufficient evidence needed to create an issue of fact over whether alleged willful wanton conduct occurred. *See Shuttlesworth v. City of Chi.*, 377 Ill.App.3d 360 (1st Dist. 2007), *appeal denied*, 226 Ill.2d 633 (2008) (affirming summary judgment and explaining that the question of whether an officer's actions amounted to willful and wanton conduct may be resolved by the trial court on a motion for summary judgment). (Doc. 41 at 4-5).

Furthermore, Defendants contend that given Lee's actions, which put Flowers in great danger, the Court may properly find as a matter of law that the actions by Peterson and McMillen were not conducted with complete indifference to and knowing disregard for her safety. (Doc. 41 at 5). Therefore, Defendants contend that as a result of the facts found by the Court and the governing law, Peterson and McMillen are entitled to summary judgment on Count VIII of Plaintiff's Complaint. (Doc. 41 at 5).

However, Defendants have not offered any new evidence that could not have been discovered previously nor are they arguing that there was a mistake of fact. The basis of their argument is simply that this Court "got it wrong" the first time around. As previously noted, a motion for reconsideration is not designed to give litigants a forum to "rehash" old arguments, and it must be supported by a showing of extraordinary circumstances justifying relief from judgment. *See Bally*, 804 F.2d at 400, 404. *See also Quaker*, 123 F.R.D. at 288. No such extraordinary circumstances are present in this case. This Court held that it is disputed as to how well McMillen could see into Flowers' residence before firing his weapon. (Doc. 38 at 13). If, as Plaintiffs argue, it was difficult to see into the home, then McMillen may have been firing into the occupied home with no clear target in sight. (Doc. 38 at 13). As such, this firing may have been without regard for the risk of harm posed to Flowers or her child. (Doc. 38 at 13). Accordingly, this issue was not fit for resolution at the summary judgment stage and is not fit for resolution at the

reconsideration stage. Therefore, Defendants Motion for Reconsideration is DENIED.

## CONCLUSION

For the foregoing reasons, Defendants Motion for Reconsideration (Doc. 40) is DENIED. IT IS SO ORDERED.

Entered this 11th day of July, 2011.

                                                        s/ Joe B. McDade
                                                       JOE BILLY McDADE
                                  United States Senior District Judge